# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SWAN CATERERS, INC. and SWAN WATERFALL CATERERS, INC. d/b/a SWAN CATERERS | : <br> : <br> : <br> : |
| v. | : CIVIL ACTION <br> : <br> : NO. 12-cv-00024 |
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | : <br> : |

## MEMORANDUM

YOHN, J.                                                                                           November 13 , 2012

Swan Caterers, Inc. and Swan Waterfall Caterers, Inc., d/b/a Swan Caterers (collectively "Swan Caterers"), bring this action against Nationwide Mutual Fire Insurance Company ("Nationwide") for breach of contract and acting in bad faith, a violation of 42 Pa. Cons. Stat. § 8371. Currently before me is Nationwide's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Nationwide's motion for summary judgment will be granted.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As the name suggests, Swan Caterers is a catering company located in Philadelphia, Pennsylvania. Swan Caterers alleges that on January 25, 2010, its property located at 2015 South Walter Street suffered direct physical loss and damage as a result of a wind- and rainstorm. (Compl. ¶ 4.) Immediately following the storm, Swan Caterers hired Mickey's Roofing & Siding Repairs ("Mickey's Roofing") and CPR Restoration and Cleaning Services, LLC to complete emergency repair services to the roof and interior of the property. (Opp'n to Mot. for Summ. J. 2.) Swan Caterers also hired Citizens Public Adjusters ("Citizens") to serve as its public adjuster

with respect to its claim. (Mot. for Summ. J. ¶ 8.) On January 28, 2010, Citizens, on behalf of Swan Caterers, contacted Nationwide and initiated a claim. (Opp'n to Mot. for Summ. J. 2.)

Nationwide assigned the claim to Ed O'Rangers, a Nationwide claims adjustor. O'Rangers scheduled an inspection of the property for February 8, 2010. (Mot. for Summ. J. ¶ 9.) O'Rangers hired A Plus Roofing to perform an inspection of the roof prior to the February 8th inspection to determine the cause of the damage. (*Id*. ¶ 13.) Following its inspection, A Plus Roofing provided O'Rangers with a report that stated, "After completing our inspection of the entire roof area, we could find no direct evidence of wind or storm damage." (*Id.* Ex. E.) O'Rangers then conducted his scheduled inspection of the interior of the property. Subsequent to his inspection, O'Rangers wrote in Nationwide's activity log that "[a]fter reading roof report and looking at roof photo's [sic], as well as completing inspectin [sic] on interior it was determined that there was no wind or storm damage to roofing to cause interior damage . . . ." (*Id.* Ex. D, NW240.) In O'Rangers's opinion, the damage was the result of improperly performed prior repairs and maintenance. (*Id.* Ex. D., NW240*; id.* Ex. F.) On February 9, 2010, O'Rangers sent a letter to Swan Caterers denying the claim.

In response to the denial letter, Jerome Sacco, president of Citizens, sent a letter to O'Rangers asking for a re-inspection. (Opp'n to Mot. for Summ. J. Ex. F.) Sacco specifically asked that engineers be present at the re-inspection to investigate the cause of the damage. Sacco stated that after reviewing pictures of the roof taken by Mickey's Roofing prior to the emergency repairs, "it appears there was windstorm damage." (*Id.*) Nationwide acquiesced and scheduled a

2

re-inspection of the property for February 17, 2010.[1] (*Id.* Ex. H.)

The following personnel were present for the February 17, 2010, re-inspection: Jay Masucci from Citizens; Nick Colanzi, a civil engineer/consultant hired by Citizens; Anthony Mickey Teranto, owner of Mickey's Roofing; and G.P. Lamina, Jr., a professional engineer from National Forensic Consultants, whom Nationwide hired to perform the inspection. (*Id.*) Swan Caterers alleges that during the inspection, Lamina stated to all present, "no problem, it's windstorm damage." (*Id.*) In his March 31, 2010, report to Nationwide, however, Lamina concluded that wind could not have caused the damage to the property. (Mot. for Summ. J. Ex. H, NW157-58.) On May 5, 2010, O'Rangers sent a second letter to Swan Caterers confirming the denial of the claim.

On June 16, 2010, Sacco sent a letter to Paul Lettieri, a claims director for Nationwide, alleging that the investigation had been prejudiced by O'Rangers. (*Id*. Ex. J, NW112.) Sacco further alleged that Lamina's report was a "blatant contradiction" of everything that he had stated during the February 17th inspection, and because "Mr. Lamina had confirmed coverage and

---

[1]There is a discrepancy as to when the re-inspection actually occurred. In its motion for summary judgment, Nationwide contends that the inspection occurred on March 11, 2010. (Mot. for Summ. J. 5; *id*. Ex. H.) Swan Caterers, however, states that the inspection occurred on February 17, 2010. (Opp'n to Mot. for Summ. J. 3; *id*. Ex. H.) Nationwide's activity log states that Nationwide contacted Lamina on February 17, 2010, and asked him to perform an inspection of the property at a later date. (Mot. for Summ. J. Ex. D, NW 236.) Lamina's report to Nationwide states that the inspection was performed on March 11, 2010. (*Id.* Ex. H.) Furthermore, Swan Caterers' answer to Nationwide's motion for summary judgment does not specifically deny that the inspection occurred on March 11, 2010, but instead states, "Mr. Lamina's report is a document the contents of which speak for itself." (Ans. to Mot. for Summ. J. ¶ 25.) In a motion for summary judgment, however, I must accept the version of the facts of Swan Caterers as it is the non-moving party. While this date does not affect the outcome of the motion, I note the discrepancy for the purpose of thoroughness, and will treat the date of the re-inspection as February 17, 2010.

would advise [Nationwide] that there was in fact exterior wind damage," it was unnecessary for Colanzi—Citizen's hired professional engineer—to complete his own report, which would have supported a claim of wind damage. (*Id.*, NW113) In his closing, Sacco stated that it was his belief that Nationwide "acted in blatant bad faith," but that he wished to speak with Nationwide "before forwarding [the] file to counsel for instigation of litigation." (*Id.*, NW113-14.)

Nationwide claims that in response to Sacco's letter, O'Rangers contacted Lamina to discuss the alleged discrepancy between his statements at the site inspection and his formal report to Nationwide. (Mot. for Summ. J. ¶ 30.) Lamina denied making the statement. He told O'Rangers that, while on the roof, he stated it was "possible" that wind caused the damage—a possibility he ruled out after checking wind speeds for January 25, 2010. (*Id.*; Ex. D, NW232.) I must, of course, accept plaintiff's version for summary judgment purposes.

Sacco sent a letter to Mark Tooher of Nationwide's claims department on November 30, 2010, claiming that neither Citizens nor Swan Caterers had received any response to letters written by Citizens dated June 16, October 6, and October 12, 2010, inquiring into the investigation. (Opp'n to Mot. for Summ. J. Ex. I.) In the letter, Sacco stated that if he did not hear from Nationwide within two weeks, he would commence litigation. In response, Tooher asked Sacco to send him all pertinent information regarding the claim that Sacco had in his possession. Sacco wrote Tooher on December 28, 2010, stating that he had forwarded all information regarding the claim. (*Id.* Ex. J.) Sacco also sent a courtesy copy of the letter to attorney Jonathan Wheeler who, although not representing Swan Caterers at that time, was "monitor[ing] the ongoing situation." (*Id.*) On January 23, 2011, after review of the information and O'Rangers's discussion with Lamina, Tooher sent a letter to Sacco confirming the denial of

4

the claim. (*Id*. Ex. K.)

On February 2, 2011, Sacco sent a letter to James Shank, Nationwide's property claims director, claiming that Swan Caterers' claim had been improperly denied and imploring him to assign a claims manager or director to the matter to bring it to a close. (*Id*. Ex. L.) Nationwide asserts that in an effort to conclude the matter it agreed to a final inspection by another independent professional engineer. (*Id*. ¶ 35.) Nationwide hired Jody DeMarco of Forensic Consultants of North America to investigate the property and determine the cause of damage. (*Id*. ¶ 36.) DeMarco conducted his investigation on March 9, 2011, with the following personnel present: Colanzi, Masucci, Teranto, O'Rangers, and Carmen D'Aquilante of Swan Caterers. (*Id*. Ex. L, NW276.) In his report to Nationwide, DeMarco concluded that wind was not the cause of the damage to the property. (*Id*. Ex. L, NW280-81.) In light of DeMarco's report, on March 31, 2011, Nationwide sent a final letter to Citizens confirming the denial of coverage. (*Id*. Ex. M.)

Swan Caterers filed this suit in the Court of Common Pleas for Philadelphia County on December 2, 2011. Nationwide removed to the United States District Court for the Eastern District of Pennsylvania on January 4, 2012. A mandatory arbitration hearing was held on June 13, 2012, after which a party requested a trial de novo. Nationwide filed this motion for summary judgment thereafter.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with

5

the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). To establish that there is no genuine dispute as to any material fact, a party may rely on "depositions, documents, electronically stored information, affidavits or declarations (including those made for purposes of the motion only), admissions interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c).

### III. DISCUSSION

Swan Caterers alleges that Nationwide breached the insurance policy by denying its claim. Swan Caterers further alleges that Nationwide's breach was committed in bad faith, a violation of 42 Pa. Cons. Stat. § 8371. In its defense, Nationwide argues that Swan Caterers' breach of contract claim is time-barred pursuant to a suit limitation clause contained in the insurance policy. Nationwide also argues that its denial of the claim is reasonable and that Swan Caterers fails to provide the "clear and convincing" evidence needed to sustain a claim of bad faith. I agree with Nationwide, and therefore find summary judgment appropriate.

#### A. Breach of Contract

Under Pennsylvania law, the statute of limitations for a breach of contract claim is four years, s*ee* 42 Pa. Cons. Stat. § 5525, and two years for a claim of bad faith, *see Ash v. Continental Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007). Parties to a contract, however, may agree to a shorter limitations period provided it is reasonable. *See McElhiney v. Allstate Ins. Co.*, 33 F. Supp. 2d 405, 406 (E.D. Pa. 1999). "A one-year time limit meets this test." *Id.*; *see also Gen.*

*State Auth. v. Planet Ins. Co.*, 346 A.2d 265, 268 (Pa. 1975) (holding one-year "commencement of suit" provision valid).

Swan Caterers' insurance policy with Nationwide contained the following suit limitation clause:

> 4. Legal Action Against Us
>    No one may bring a legal action against us under this insurance policy unless:
>    a.   There has been full compliance with all of the terms of this insurance; and
>    b.   The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

(Mot. for Summ. J. Ex. C, NW041.) The "direct physical loss or damage" to Swan Caterers occurred on January 25, 2010, when the property sustained interior water damage. Swan Caterers commenced this suit on December 2, 2011, almost two years after the damage occurred. Thus, the suit is time-barred.

Swan Caterers offers several arguments against the applicability of the suit limitation clause. First, Swan Caterers argues that the "harm" that occurred was not the physical harm to the building's interior and roof by the storm on January 25, 2010, but the harm "caused by Nationwide's later refusal to properly investigate[,] and [the] denial of Swan Caterers' claim regarding that storm." (Opp'n to Mot. for Summ. J. 5.) I find this argument unpersuasive as to the breach of contract claim. First, the contract language does not speak of "harm"; the specific language is "direct physical loss or damage." The plain meaning of the contract refers to property damage, not the denial of coverage by the insurer. Second, the argument is at odds with Pennsylvania case law. In *Portside Investors, L.P. v. Northern Insurance Co. of New York*, the Superior Court made clear that the "physical loss or damage" referenced in the suit limitation clause—a provision identical to the one contained in Swan Caterers' insurance policy—was the

7

physical harm to a structure. 41 A.3d 1, 13 (Pa. Super. Ct. 2011); *see also Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 586 (E.D. Pa. 1999) ("The policy's one year limitation period 'runs from the date of the occurrence of the destructive event or casualty insured against.'" (quoting *Gen. State Auth.*, 346 A.2d at 267)). Therefore, I do not find that Swan Caterers' "harm" argument raises a material question of fact concerning the suit limitation clause.

Next, Swan Caterers argues that Nationwide waived the suit limitation clause through its continued investigation into the damaged property, and is therefore estopped from asserting the provision as a defense. "Where the insurer has by its actions led a policyholder to believe that the one-year bar will not be asserted, traditional concepts of waiver or estoppel have been applied to excuse an untimely lawsuit." *Evans Prods. Co. v. West Am. Ins. Co.*, 736 F.2d 920, 927 (3d Cir. 1984); *see also Gen. State Auth.*, 346 A.2d at 268 ("[W]e also recognize that if conduct or action on the part of the insurer is responsible for the insured's failure to comply in time with the conditions set forth [in the policy], injustice is avoided and adequate relief assured by resort to traditional principals of waiver and estoppel."). "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1157 (Pa. Super. Ct. 2009) (quoting *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs. Ltd.*, 610 A.2d 499, 501 (Pa. Super. Ct. 1992)). "Waiver is a matter of intention. It may be expressed or implied." *Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962). "Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was

8

induced by word or deed to expect." *Prime Medica*, 970 A.2d at 1157 (quoting *Novelty Knitting Mills v. Siskind*, 457 A.2d 502, 503 (Pa. 1983)). "The insured must establish a factual basis to assert the defense of waiver or estoppel," *id.*, meaning the insured "must present 'reasonable grounds for believing that the time limit would be extended' or the insurer would not strictly enforce the suit limitation provision." *Id.* (quoting *McMeekin v. Prudential Ins. Co. of Am.*, 36 A.2d 430, 432 (Pa. 1944)).

Here, Swan Caterers has not presented any evidence to support its claim of waiver or estoppel. Nationwide never made any statement to Swan Caterers that it would not rely upon the suit limitation provision, nor did it show any intention through its conduct that it would not enforce the provision. Following the first investigation on February 8, 2010, Nationwide denied Swan Caterers' claim for property damage on February 9, 2010. Although Nationwide performed subsequent investigations after A Plus Roofing's initial assessment—all at the behest of Swan Caterers—"[t]he process of investigation in determining liability by an insurer does not constitute a waiver by the insurer." *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 710 (6th Cir. 1992). Furthermore, there is no evidence that Nationwide ever mentioned the possibility of a settlement of the claim, or asked Swan Caterers to refrain from bringing suit, as would be required for an estoppel.[2] *See Prime Medica*, 970 A.2d at 1158 (holding estoppel defense invalid because insurer never mentioned possibility of settlement or induced insured to refrain from commencing suit). While the correspondence between Swan Caterers and Nationwide spanned a

---

[2]Swan Caterers claims that Lamina's alleged statement of "no problem, it's windstorm damage" created an estoppel. I find this argument unpersuasive, especially in light of the fact that Nationwide sent a letter confirming the denial of coverage on March 31, 2010, five weeks following the re-inspection.

9

period of fourteen months, Nationwide's decision to deny coverage remained consistent throughout; there is no evidence that there was ever a statement or suggestion by Nationwide that should have led Swan Caterers to reach any other conclusion. *See id.* ("The mere declaration that Insurer was investigating the claim is insufficient to prove Insured was induced to forebear from commencing suit."). Therefore, because Swan Caterers' waiver and estoppel arguments do not raise a genuine dispute as to a material fact, summary judgment for Nationwide is appropriate on this issue.

Swan Caterers also argues that the suit limitation clause cannot be enforced because Nationwide failed to inform Swan Caterers that the "suit limitation period was about to expire, had expired, or would be relied upon by Nationwide to defeat Swan Caterers' claim." (Opp'n to Mot. for Summ. J. 7.) This argument is without merit. First, the suit limitation clause was clearly stated in Swan Caterers' policy, which Swan Caterers and its public adjuster had an obligation to read. *See Palmisano v. State Farm Fire and Cas. Co.*, No. 12-886, 2012 WL 3595276, at *11 (W.D. Pa. Aug. 20, 2012) ("The contractual limitations clause is clearly set forth in the policy, which the insured has a duty to read and is presumed to understand." (citations omitted) (citing *Schoble v. Schoble*, 37 A.2d 604 (Pa. 1944)). Nationwide is under no obligation to remind policyholders of the suit limitation clause contained within the insurance policy. *See Waldman v. Pediatric Services of Am., Inc.*, No. Civ. A 97-7257, 1998 WL 770629, at *8 (E.D. Pa. Nov. 5, 1998) (stating insurer has no duty to remind insured of suit limitation provision). Second, the denial letters sent from Nationwide to Swan Caterers on February 9, 2010, January 23, 2011, and March 21, 2011, all contained the following language: "Nationwide expressly reserves all of the rights and defenses the company may have under [Swan Caterers'] policy of

insurance and applicable law." The inclusion of this language in each letter illustrates that Nationwide never intended to waive any provision in the policy, including the suit limitation clause. *See Davidson v. Brethren Mut. Ins. Co.*, No. 3:05-1929, 2007 WL 2007991, at *6 (M.D. Pa. July 5, 2007) (finding that correspondence between insurer and insured's counsel that contained similar language demonstrated that insurer did not waive suit limitation provision). Therefore, I do not find that a genuine dispute of a material fact exists as to whether Nationwide waived the suit limitation clause; clearly it did not.

### B. Bad Faith

In count II, Swan Caterers alleges that its claim for property damage was denied by Nationwide in bad faith. Accordingly, Swan Caterers seeks a remedy pursuant to 42 Pa. Cons. Stat. § 8371.

Section 8371 states the following:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest in the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. While the statute does not define "bad faith," the Third Circuit has stated that "the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits." *UPMC Health System v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004); *see also Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) ("'Bad

faith' on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy . . . ."(quoting *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Furthermore, "[a] valid cause of action for bad faith requires 'clear and convincing evidence . . . that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Treadways LLC v. Travelers Indem. Co.*, 467 F. App'x 143, 146 (3d Cir. 2012). "Accordingly, the plaintiff's burden in opposing a summary judgment motion is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999).

Based on the information before me, Swan Caterers has not provided "clear and convincing" evidence, or even a preponderance of evidence, from which a reasonable jury could find bad faith. Nationwide conducted four separate investigations concerning the damage to Swan Caterers' building: one by A Plus Roofing and Contracting, Inc.; another by O'Rangers, its adjuster; a third investigation by Lamina, a professional engineer with National Forensic Consultants, Inc.; and a final investigation by Jody DeMarco, a professional engineer with Forensic Consultants of North America, LLC. All of these experts came to the same conclusion: wind did not cause the roof damage. That alone is enough of a reasonable basis on which to deny a claim for benefits under an insurance policy that is neither frivolous nor unfounded.

In opposing Nationwide's motion for summary judgment, Swan Caterers makes several arguments as to why genuine disputes of material facts exist with respect to the claim of bad faith. First, Swan Caterers argues that Nationwide did not perform a proper investigation into the alleged wind damage because it did not review photographs of the damages taken prior to the

emergency repairs by Mickey's Roofing. (Opp'n to Mot. for Summ. J. 11-12.) Swan Caterers does not offer, however, any evidence to support this assertion. In fact, much of the evidence suggests the contrary. In a letter from Sacco to O'Rangers, dated February 15, 2010, Sacco mentions the photographs of the roof taken prior to the repairs, states that they are in his possession, and inquires as to whether Nationwide reviewed the photographs prior to its denial of coverage. (*Id*. Ex. F.) Then, in a follow-on letter to Mark Tooher of Nationwide, dated December 28, 2010, Sacco states that he forwarded "all reports and letters" to Nationwide for its review. (*Id*. Ex. J.) In response, Tooher wrote a letter to Sacco on January 23, 2011, in which he stated that Nationwide "conducted a further review of *all material submitted by [Sacco's] office*," and again found sufficient information by which to deny coverage. (*Id*. Ex. K) (emphasis added.) Finally, in a March 31, 2011, letter from Tooher to Sacco, Tooher again states, "Based upon all of these inspection findings, the contractor's report, engineer reports and professional opinions contained therein, *photographs*, and weather reports, it is our conclusion that there are no direct wind or storm related damages to the roofing which caused interior water damage." (*Id*. Ex. M) (emphasis added.) The exhibits of Swan Caterers itself suggest that these pictures, which were important in assessing the cause of the damage, were forwarded by Sacco's office and reviewed by Nationwide. More importantly for summary judgment purposes, Swan Caterers has proffered no evidence that they were not.

    Swan Caterers carries this argument a step further by stating that DeMarco's investigation was incomplete because "he did not see the damages before the emergency repairs . . . ." (*Id*. 12.) By this logic, no one ever could have performed a satisfactory investigation, as Mickey's Roofing completed the repairs on behalf of Swan Caterers before Nationwide's initial inspection

13

of the roof. (Def.'s Reply Br. Ex. A 18.) Swan Caterers also argues that DeMarco's inspection was incomplete because he failed to account for the possible lifting effect that the wind could have had on the roof. (Opp'n to Mot. for Summ. J. 12.) While DeMarco admitted at the arbitration hearing that he did not consider the wind's lifting effect as it passed over the roof's parapet wall (*id*. Ex. N), that alone is not enough to establish that Nationwide lacked a reasonable basis in denying the claim. As the Third Circuit has noted, "'[a] reasonable basis is all that is required to defeat a claim of bad faith.'" *Treadways*, 467 F. App'x at 147 (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)). A finding by four separate experts in the field that wind was not the cause of the damage is clearly a reasonable basis to deny the claim.

Next, Swan Caterers argues that Nationwide acted in bad faith because it did not fully investigate Lamina's alleged oral statement that wind caused the damage to the roof. Swan Caterers suggests that Lamina and O'Rangers acted in concert in preventing this finding from making its way into Lamina's final report. Despite these allegations, Swan Caterers does not provide any evidence—not a single affidavit or deposition—to substantiate its claim. All that is offered in support of this argument is Sacco's statement in his June 16, 2010 letter to Nationwide that Lamina allegedly made such a remark during the re-inspection. (Opp'n to Mot. for Summ. J. 3; *id.* Ex. H.) Without some additional evidence, this contention does not rise to the level of a disputed material fact that can defeat summary judgment, and certainly not one that can satisfy a "clear and convincing" burden under a claim of bad faith.

Finally, Swan Caterers argues that Nationwide's continued negotiations with Swan Caterers, a legally unrepresented party, is evidence of bad faith. In support of this argument,

14

Swan Caterers relies on section 146.7(e) of the Pennsylvania code, which states:

> Insurers may not continue negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the rights of the claimant may be affected by a statute of limitations or a policy or contract time limit, without giving the claimant written notice that the time limit may be expiring and may affect the rights of the claimant. The notice shall be given to first-party claimants 30 days, and to third-party claimants 60 days, before the date on which the time limit may expire.

31 Pa. Code § 146.7(e).

The Unfair Claims Settlement Practices Regulations (UCSPR), 31 Pa. Code §§ 146.1-146.10, were adopted by the Commonwealth of Pennsylvania in 1978, and act in concert with the Unfair Insurance Practices Act (UIPA), 40 Pa. Stat. Ann. §§ 1171.1-1171.15. The purpose behind the regulations implementing the Acts is to "define[] certain minimum standards which, if violated with a frequency that indicates a general business practice, will be deemed to constitute unfair claims settlement practices." § 146.1. Such practices can then be regulated by the Insurance Commissioner of the Commonwealth under the UIPA. *See* § 1171.2. The authority to conduct investigations into insurance practices, issue injunctions against insurance companies, hold administrative hearings, and impose administrative and civil penalties under the UIPA rests solely with the Insurance Commissioner. *See* §§ 1171.7-1171.11. In *D'Ambrosio v. Pennsylvania National Mutual Insurance Co.*, the Pennsylvania Supreme Court made clear the UIPA did not provide for a private cause of action. *See D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co.*, 431 A.2d 966, 970 (Pa. 1981). Courts within the Third Circuit and the Commonwealth of Pennsylvania continue to recognize that the UIPA and UCSPR do not provide plaintiffs with a private cause of action. *See, e.g., Leach v. Northwestern Mut. Ins. Co.*, 262 F. App'x 445, 459 (3d Cir. 2008) ("As the District Court pointed out, there is no private right of action under the UIPA, which can only be enforced by the insurance

15

commissioner."); *Connolly v. Reliastar Ins. Co.*, Civ. A 03-5444, 2006 WL 3355184, at *12 (E.D. Pa. Nov. 13, 2006) ("The case law is abundantly clear that there is not private cause of action under the UIPA or UCSPR."); *Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 14 (Pa. Super. Ct. 2004) ("[O]ur Supreme Court has held that a private cause of action in tort does not lie under the Unfair Insurance Practices Act."). Furthermore, since the Pennsylvania Superior Court's decision in *Terletsky*, which defined "bad faith" in the context of section 8371, courts in this circuit have "refused to consider UIPA violations as evidence of bad faith." *See Watson v. Nationwide Mut Ins. Co.*, No. 11-1762, 2011 WL 4894073, at *4 (E.D. Pa. Oct. 12, 2011) (citing *Leach*, 262 F. App'x at 459); *Dinner v. United Services Auto Ass'n Cas. Ins. Co.*, 29 F. App'x 823, 827 (3d Cir. 2002). Therefore, Swan Caterers' reliance on the UCSPR is inapposite to its claim for bad faith.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted. An appropriate order follows.